AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
9/9/25
CENTRAL DISTRICT OF CALIFORNIA
BY: _____MRV_____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
9/9/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____1V_____ DEPUTY

United States of America

v.

Ceaser Salvador Sigala,

Defendant

Case No. 2:25-mj-05582-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of September 7, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assault on a Federal Officer |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
_____
Complainant's signature

Aaron DeGuzman, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 09/09/2025

*Patricia Donahue*
_____
Judge's signature

City and state: Los Angeles, California

Hon. Patricia Donahue, U.S. Magistrate Judge
*Printed name and title*

AUSA: Rahul R.A. Hari (x 6159)

**AFFIDAVIT**

I, Aaron DeGuzman, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against, and arrest warrant for, Ceaser Salvador Sigala ("SIGALA"), for a violation of 18 U.S.C. § 111(a)(1) (Assault on a Federal Officer).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so employed since February 2017.

4. Before my current employment with HSI, I served as a U.S. Customs and Border Protection Officer from 2012 until 2017.

5. I have completed the Criminal Investigator Training Program and the HSI Special Agent Training program at the Federal Law Enforcement Training Center in Glynco, Georgia.

During my six-month training program, I completed courses in criminal investigative functions, criminal law, immigration law, and customs law.

6. I am currently assigned to the HSI office in Paramount, California, where I work with the El Camino Real Task Force and have training and experience investigating assaults on federal officers. As part of my law enforcement training and experience, I have participated in the execution of search and arrest warrants and in the seizure of evidence.

### III. STATEMENT OF PROBABLE CAUSE

7. Based on my review of law enforcement reports and conversations with other law enforcement agents (including the victim SA), and my own knowledge of the investigation, I am aware of the following:

**A.   Initial Interaction with SIGALA**

8. On September 7, 2025, HSI Special Agent R.R. and HSI Criminal Analyst S.L. were in Los Angeles, California near the federal building located at 300 North Los Angeles Street, Los Angeles, California, 90012, conducting surveillance on a target of a federal investigation with an active arrest warrant (the "Target").

9. At approximately 10:30 p.m., SA R.R. identified the Target driving a black Chevrolet Malibu southbound on Alameda Street. SA R.R. activated his blue and red police takedown lights and initiated a traffic stop.

10. SA R.R. exited his government vehicle wearing HSI issued body armor that displayed visible reflective police

markings and approached the driver's side door. SA R.R. gave multiple verbal commands for the Target to step out of the car so that he could execute a federal arrest warrant. The Target remained in the Chevy Malibu. HSI SA R.R. then forcibly removed the Target from the car.

11. Several bystanders began to surround SA R.R. and Analyst S.L. An unknown Hispanic male, later identified as SIGALA, approached SA R.R. from across the street wearing a camoflauge print hat and red shirt while holding onto a long skateboard with a pointed tip.

12. SIGALA began to approach SA R.R., Analyst S.L., and the Target despite repeated verbal commands from SA R.R. to step back. As SIGALA approached, he kept stating "Let her go." When SIGALA came within arms-reach of SA R.R. and began lunging towards SA R.R., SA R.R. kicked SIGALA, continuing to give loud verbal commands to SIGALA to step back.

13. SIGALA stepped back momentarily while continuing to repeat, "Let her go." SIGALA then used the pointed end of his skateboard to jab SA R.R. approximately two times in the left arm. SIGALA speared SA R.R. with sufficient force to cause contusions requiring medical evaluation. As a result of SIGALA's jabs with the skateboard, SA R.R. lost his grip on the Target, who escaped and remains a fugitive.

14. The Los Angeles Police Department ("LAPD") responded to the scene and SIGALA fled into a group of bystanders. LAPD officers searched for SIGALA and detained him on SA R.R.'s confirmation that SIGALA was the individual who assaulted him.

SIGALA was no longer wearing the green camoflauge hat when he was detained, but LAPD later recovered the hat abandoned on the street. According to the LAPD, SIGALA resisted arrest and was taken into their custody to face charges for violating California Penal Code Section 148: Resisting Arrest.

### B. SIGALA's Post-Arrest Interview

15. On September 8, 2025, at approximately 12:52 p.m., SIGALA agreed to be interviewed by SA Shabnam Aboubakri and SA Norman Early after acknowledging he understood the written and verbally given Miranda rights. Based on my conversations with SA Aboubakri and SA Early and my review of a recording of the interview, I learned the following:

16. SIGALA stated that he was departing Union Station when he saw the Target being apprehended by SA R.R.

17. SIGALA claimed he initially thought SA R.R. could be an ICE agent but ultimately believed SA R.R. was a police impersonator based on an overall impression and his clothing. Although SIGALA stated that he did recognize the police markings on SA R.R.'s vest, SIGALA believed they were fake. SIGALA stated he has been friends with the Target for approximately two months and that she has asked him to attend court for her in the past, but that he does not know her name.

18. SIGALA admitted to hitting SA R.R. with the skateboard after he was kicked. SIGALA claimed to have left the scene and later detained by LAPD.

## IV. CONCLUSION

19. For all the reasons described above, there is probable cause to believe that Ceaser Salvador SIGALA has committed a violation of 18 U.S.C. § 111(a)(1)(Assault on a Federal Officer).

          /s/
Aaron DeGuzman, Special Agent, HSI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 9th day of September, 2025.

*Patricia Donahue*
HONORABLE PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE

5